A92A1074. GUTHERIE et al. v. FORD EQUIPMENT LEASING COMPANY.
(424 SE2d 889)

SOGNIER, Chief Judge.

Ford Equipment Leasing Company conducted a nonjudicial foreclosure under a power of sale contained in a deed to secure debt executed by Thomas Gutherie to secure a loan made by Ford to Greensboro Lumber Company (GLC). Ford then instituted this confirmation proceeding. After a hearing, the superior court entered an order confirming the sale. Gutherie and GLC appeal.

The property at issue comprised a 300-acre farm and the resi-

dence and outbuildings of appellant Gutherie. At the time of the foreclosure sale, appellants were indebted to appellee in the amount of $1,078,587. Darryl Gossett was the high bidder at the December 1991 sale, acquiring the property for his bid of $200,000. The sale was made subject to other nondischarged debts and delinquent taxes totalling $261,297.

At the confirmation hearing, appellants did not challenge the validity of the notices and advertisements made by appellee, but instead contended that the sale did not bring the true market value of the property as required for confirmation under OCGA § 44-14-161 (b). Appellee's appraiser opined that the market value of the property was $919,450 if given two or more years to sell; however, he testified that he discounted this market value to $460,000 because he was instructed by appellee to calculate a "quick sale" value rather than a "market time sale" value. Appellants' two appraisers arrived at valuations of $950,000 and $985,000. While they agreed with appellee that a sale of such a property ordinarily would take six months to three years, they disagreed with the "quick sale" approach. One appraiser opined that while the rapid timing of the foreclosure sale might justify some discounting of the valuation, a 50 percent reduction was excessive, while the other appraiser stated that a quick sale value was not the same as true market value. The trial court found the total value bid at auction, $461,297, equalled the true market value and confirmed the sale.

1. OCGA § 44-14-161 (b) provides that "[t]he court shall require evidence to show the true market value of the property sold under the powers [of sale contained in the deed to secure debt] and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale." "True market value," which is used interchangeably with "fair market value," *Aaron v. Life Ins. Co. of Ga.*, 138 Ga. App. 286 (1) (226 SE2d 96) (1976), is "the price which (the property) will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who wishes to buy, but is not under a necessity to do so." (Citations, punctuation, and emphasis omitted.) *Wheeler v. Coastal Bank*, 182 Ga. App. 112, 114 (354 SE2d 694) (1987). Although as a general rule the price brought at a public sale is prima facie evidence of the market value (absent chilling of the bidding, fraud, or any other element adversely affecting the sale), id. at 113 (1), this general rule does not apply to confirmation of foreclosures under power of sale, for the confirmation statute requires separate analysis of the value independent of the sum bid at the public sale. Id. The lender bears the burden of proving that the foreclosure sale brought at least the true market value of the property. Id. at 114.

The question presented in the case sub judice is whether a "quick

sale value" may constitute competent evidence of the "true market value" of real property within the meaning of OCGA § 44-14-161 (b). Our courts have held that in determining true market value, a trial court may consider market conditions in general at the time of the sale under power and the effect of depressed market conditions on the value of a subject property. *Gunnells v. Crump*, 172 Ga. App. 607, 608 (323 SE2d 903) (1984); see *Wall v. Federal Land Bank*, 240 Ga. 236, 238 (3) (240 SE2d 76) (1977). However, the parties have not cited, and our extensive research has not uncovered, any case that has condoned discounting the value of a foreclosed property on the basis that the sale was conducted in a shortened time frame. Accordingly, we will consider the view taken by our courts of the use of "quick sale" valuations in other contexts as well as authority in other jurisdictions.

In *Parks v. Assoc. Commercial Corp.*, 181 Ga. App. 235-236, 237 (1) (351 SE2d 661) (1986), this court addressed the use of a "quick sale value" in the context of repossession and disposal of secured collateral under the UCC. The record in *Parks* established that the price paid for the collateral at the public sale was equal to its "quick sale value" but substantially less than the price at which the collateral subsequently was resold. Considering this discrepancy together with evidence that the creditor had known prior to the sale that other prospective buyers were willing to pay more for the collateral than the bid-in price, we held that "these facts raise a serious question concerning whether the sale of the collateral was conducted in a commercially reasonable manner as required by OCGA § 11-9-504 (3)," and accordingly found the debtors had properly raised that ground as a defense. Id. at 237 (1).

The definition of "fair market value" established by the Internal Revenue Service for use in valuation of real property for estate taxes is also instructive. "Fair market value" is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. The fair market value of a particular item of property . . . is not to be determined by a forced sale price. Nor is the fair market value . . . to be determined by the sale price of the item in a market other than that in which such item is most commonly sold to the public. . . ." Treas. Reg. § 20.2031-1 (b). The first sentence of this definition is consistent with the willing buyer, willing seller definition used in Georgia. See *Wheeler*, supra; see also *Wright v. MARTA*, 248 Ga. 372, 375 (283 SE2d 466) (1981). Upon reviewing Georgia law on the computation of fair market value and considering the language and purpose of the confirmation statute, we are persuaded that the entirety of the IRS definition of fair market value is consistent with Georgia law and should be used to resolve the issue sub judice.

First, Georgia law recognizes that the sale price obtained at a foreclosure sale is not a sufficient indicator of true market value. In *Hubbard v. Farmers Bank*, 155 Ga. App. 720 (272 SE2d 510) (1980), this court rejected a secured party's argument that proof of the price obtained at a personal property foreclosure sale was sufficient to establish market value, reasoning that "[f]oreclosure sales are forced sales and notoriously fail to bring the true market price of the [property]." Second, the confirmation statute, as interpreted by our courts, embodies the principle set forth in the IRS definition by requiring evidence of value other than the public sale price, see *Wheeler*, supra at 113 (1), thereby implicitly acknowledging that the conditions under which a foreclosure sale is conducted differ from the ordinary market for the property in question and that the price obtained in foreclosure does not necessarily equal true market value. Third, the General Assembly enacted OCGA § 44-14-161 for the purpose of providing debtor relief by limiting and abating deficiency judgments. *First Nat. Bank v. Kunes*, 230 Ga. 888, 890 (199 SE2d 776) (1973). Accordingly, we hold that OCGA § 44-14-161 (b) must be read to require proof of true market value *under the usual market conditions* for sales of such property. Otherwise, the legislative purpose of OCGA § 44-14-161 would be defeated. See OCGA § 1-3-1 (a) (in interpreting statutes, "courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy").

Applying this interpretation of OCGA § 44-14-161 (b) to the facts of the instant case, we conclude the trial court improperly considered evidence of the "quick sale" value of the subject property because such a valuation does not reflect the price that would be obtained in a sale under the usual market conditions. Accord *Parks*, supra. Use of the "quick sale" valuation in confirmation proceedings is inconsistent with the legislative purpose of OCGA § 44-14-161 (b) because it presumes that "true market value" may be construed to mean "market value under quick sale conditions." When the "quick sale" valuation is eliminated from the record, there remains no evidence to support the trial court's determination that the sale under power brought at least the true market value of the property. Consequently, the trial court erred by confirming the sale. See *Wheeler*, supra at 114-115.

2. Appellants have contended below and on appeal that the trial court should have denied confirmation and ordered a resale of the property pursuant to OCGA § 44-14-161 (c), which authorizes the court to order a resale "for good cause shown." Given that appellee did not prove that it sold the property for true market value but did obtain an appraisal (albeit a fatally flawed one) before the sale and did sell the property for an amount equal to that appraisal, a resale would be authorized. *Adams v. Gwinnett Commercial Bank*, 140 Ga.

App. 233 (230 SE2d 324) (1976), aff'd, 238 Ga. 722 (235 SE2d 476) (1977); see *Davie v. Sheffield*, 123 Ga. App. 228 (180 SE2d 263) (1971) (resale may be had for mere inadequacy of price). Accordingly, we reverse the order of confirmation and remand this proceeding to the trial court for further proceedings consistent with this opinion.

3. As a result of our rulings in Divisions 1 and 2, we need not consider appellants' other enumerations of error.

*Judgment reversed and remanded. McMurray, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 13, 1992.

*William F. Lozier, Lightmas & Delk, Frank A. Lightmas, Jr.*, for appellants.

*W. Dan Greer*, for appellee.