A10A1510. MUNDY MILL DEVELOPMENT, LLC et al. v. ACR PROPERTY SERVICES, LP.
(703 SE2d 137)

DOYLE, Judge.

Mundy Mill Development, LLC, REL Properties, Inc., and Robert E. Lanier (collectively "Mundy Mill") appeal from the Hall County Superior Court's order approving and confirming a foreclosure sale by ACR Property Services, LP ("ACR"). Because the trial court's confirmation order was supported by competent evidence, we affirm.

---

> Value on the date of sale is a factual question to be resolved by the trier of fact. In a proceeding for confirmation of a foreclosure sale of real property, the judge sits as a trier of fact, and his findings and conclusions have the effect of a jury verdict. Where the trial judge, sitting as the trier of the facts, hears the evidence, his finding based upon conflicting evidence is analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.[1]

A trial court cannot confirm a foreclosure sale unless it is "satisfied that the property so sold brought its true market value. True market value is the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so."[2]

The record shows that on August 29, 2007, Mundy Mill Development, LLC, executed a security deed in favor of Haven Trust Bank to secure repayment of a promissory note in the amount of $5,375,000. The deed granted Haven Trust a first priority security interest in a 40.1-acre parcel of unimproved property located in Hall County, Georgia.[3] Thereafter, the Federal Deposit Insurance Company ("the FDIC") was appointed receiver of Haven Trust Bank following the bank's failure.

Following Mundy Mill's failure to pay the obligation when it matured on January 5, 2009, the FDIC transferred the security deed to ACR on June 5, 2009. ACR foreclosed on the property on September 1, 2009, and sold it at auction to ACR and High Trust Bank as unequal tenants in common for $3,910,000.[4] ACR then applied to the Hall County Superior Court for confirmation of the sale pursuant to OCGA § 44-14-161.

Because the parties stipulated that the foreclosure sale was proper, the only issue before the trial court at the confirmation hearing was whether the property was sold at true market value. Following the evidentiary hearing, the trial court approved and confirmed the foreclosure sale in all respects. Mundy Mill appeals, arguing that the trial court erred by finding that the foreclosure sale price reflected true market value and was reasonable under current

---

[1] (Punctuation omitted.) *Greenwood Homes v. Regions Bank*, 302 Ga. App. 591, 592 (692 SE2d 42) (2010).

[2] (Punctuation omitted.) Id. at 593 (1) (a). See OCGA § 44-14-161 (b).

[3] REL Properties, Inc., and Robert E. Lanier personally guaranteed the obligation.

[4] ACR had a 77.982 percent undivided interest, and High Trust Bank had a 22.018 percent undivided interest in the property.

market conditions.

At the evidentiary hearing, the experts for both parties agreed that the subject property is zoned for 460 apartments, and both experts testified in terms of a per apartment price, using a sales comparison approach.[5] ACR's expert, M. Donald Poole, opined that the property was worth $8,000 per unit, for a total price of $3,680,000. In his appraisal, Mundy Mill's expert, Clayton M. Weibel, valued the property at $9,000 per unit, for a total of $4,140,000.

At the hearing, Richard Warren Deriso, the vice president of both Mundy Mill and REL Properties, testified that an entity named Prime Interest made multiple offers to purchase 17 of the 40.1 acres of the subject property prior to the foreclosure.[6] Prime Interest offered to pay $8,750 per unit for 17 acres in March 2009. Mundy Mill felt that the offer was "well below the value of the property" and rejected it. Then, in April 2009, Prime Interest increased its offer to $9,650 per unit for the 17-acre tract. According to Deriso, Mundy Mill verbally accepted the April offer, but was unable to sell the property at that time because the FDIC had begun the process of transferring the deed to ACR and would not accept bids for the property. Deriso testified that a representative from ACR then approached Mundy Mill and "leaned on [them] very hard" to get an offer for a short sale. Mundy Mill went back to Prime Interest and explained that ACR had acquired the note and had Mundy Mill "under the gun" to sell the property quickly. Prime Interest responded with an offer of $8,000 per unit for the 17-acre tract in June 2009.

Poole testified that he was advised about the June 2009 offer of $8,000 per unit at the time he appraised the property, and he was under the impression that the offer was acceptable to the owners. Poole was also aware that the offer was only for a portion of the property and that the lender would not approve a sale for a portion of the property. According to Poole, "that factored strongly into [his] consideration, was that there was actually a meeting of the minds at $8,000 a unit for a portion of the site." Poole was not aware that Prime Interest had also made offers of $8,750 and $9,650 for the 17-acre site. Poole was not asked, however, whether such knowledge would have changed his opinion regarding the true market value of the property.

Mundy Mill's expert, Weibel, testified that he was unaware of any of the offers from Prime Interest when he appraised the

---

[5] Both experts adjusted the prices of comparable sales in 2008 downward to account for market conditions. Mundy Mill's expert reduced the 2008 comparables by 15 percent, while ACR's expert reduced them by 25 percent.

[6] Mundy Mill had listed the property for sale with a broker.

property. Weibel further testified during direct examination as follows:

Q: Does [knowledge of the $9,650 offer] affect your value in any way from the $9,000 that you stated in your appraisal?
A: Yes. I think my understanding since my appraisal was completed is that was an offer made by a legitimate buyer and accepted by the property owner, which signifies to me a meeting of the minds so that I think that warrants serious consideration that the value may actually be more in line with the $9,650 offer.
Q: In any event, though, your appraisal value is $9,000 per unit?
A: Correct.

Weibel further explained that the $8,000 from Prime Interest was a quick sale and that, in his opinion, quick sale prices are "not reflective of market value."

On appeal, Mundy Mill argues that the trial court erred by finding that the foreclosure sale price of $3,910,000 reflected the true market value of the property. Instead, Mundy Mill claims that the foreclosure price was improperly based on the quick sale value of the property. Mundy Mill relies upon *Gutherie v. Ford Equip. Leasing Co.*,[7] in which we held that the trial court erred by confirming a foreclosure sale based solely upon "evidence of the 'quick sale' value of the subject property because such a valuation does not reflect the price that would be obtained in a sale under the usual market conditions."[8] *Gutherie* does not require reversal of the instant case, nor does *Cartersville Developers v. Ga. Bank & Trust*,[9] upon which Mundy Mill also relies. Here, unlike in *Gutherie* and *Cartersville Developers*, the expert's opinion was not based solely on the quick sale value. Instead, Poole explained that the $8,000 offer was one of several factors in his fair market value determination, along with his analysis of six comparable sales, discussions with other brokers and developers, and a "land residual approach" that he used.[10] And Mundy Mill's expert conceded that Poole's 25 percent market

---

[7] 206 Ga. App. 258, 261 (1) (424 SE2d 889) (1992).
[8] Id. at 261 (1).
[9] 292 Ga. App. 375 (664 SE2d 783) (2008).
[10] Poole testified that the land residual approach involves making a determination regarding true market value based on an amount that a developer would be willing to pay for undeveloped property, taking into consideration the development costs of the final completed project, that would allow the developer to earn "a minimal return on his investment." According to Poole, his land residual analysis of the subject property resulted in a value of $7,500 to $8,000 per unit.

condition adjustment was reasonable, which, if applied to the comparable sales he relied upon in his appraisal, would result in a true market value of $8,000 to $8,529 per unit.

> On appellate review, the test is not whether this court would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale.[11]

Here, in addition to Poole's testimony regarding the bases for his opinion and Weibel's concession regarding value, the trial court heard and considered Deriso's testimony regarding all three of the offers by Prime Interest (for a portion of the 40.1-acre site), as well as Weibel's testimony about how the higher offers would increase his appraisal value. Thus, the fact that the foreclosure sale was the same as the quick sale value does not require reversal in this case, nor does the fact that the experts were not informed about the two higher offers (for only a portion of 40.1-acre site) before they completed their appraisals.

> [B]ecause the appraiser's opinion was not based on sheer speculation, we will not second guess any methodology utilized to reach the opinion. The superior court had sufficient data in evidence upon which it could apply its own knowledge and ideas so as to derive its own opinion as to the market value of the property at the time of the sale.[12]

Accordingly, Mundy Mill's challenge is without merit.[13]
*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 5, 2010.

*Whelchel, Dunlap, Jarrad & Walker, Madeline S. Wirt, Bethany S. Magnus*, for appellants.

---

[11] (Punctuation omitted.) *Blue Marlin Dev. v. Branch Banking &c. Co.*, 302 Ga. App. 120, 122 (1) (690 SE2d 252) (2010).

[12] (Punctuation omitted.) *REL & Assocs. v. Fed. Deposit Ins. Corp.*, 304 Ga. App. 33, 35 (1) (b) (695 SE2d 370) (2010).

[13] See id.; *Greenwood Homes*, 302 Ga. App. at 596 (3); *Blue Marlin*, 302 Ga. App. at 122 (1); *Statesboro Blues Dev. v. Farmers &c. Bank*, 301 Ga. App. 851, 853-854 (690 SE2d 205) (2010).

*Schreeder, Wheeler & Flint, Debbie A. Wilson, David B. Carpenter*, for appellee.