A11A0279. HENDERSON PROPERTY HOLDINGS, LLC et al.
v. SEA ISLAND BANK.
(714 SE2d 382)

DOYLE, Judge.

This case arises from an application for confirmation of a foreclosure sale filed pursuant to OCGA § 44-14-161 by Sea Island Bank against Henderson Property Holdings, LLC, Edwin J. Feiler, Jr., and Andrew B. Feiler (collectively "Henderson Property Holdings"). Henderson Property Holdings appeals the trial court's final order confirming the sale of three adjacent parcels of commercial property in the amounts of $1,030,000, $1,090,000, and $1,680,000. Finding no error, we affirm.

> Value on the date of sale is a factual question to be resolved by the trier of fact. In a proceeding for confirmation of a foreclosure sale of real property, the judge sits as a trier of fact, and his findings and conclusions have the effect of a jury verdict. Where the trial judge, sitting as the trier of the facts, hears the evidence, his finding based upon conflicting evidence is analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.[1]

So viewed, the record reveals that Sea Island Bank hired Timothy C. Wilson to appraise the property in July 2009 and January 2010 for the foreclosure sale. His July 2009 appraisals, which were based on "what [he] thought would have been a typical reasonable marketing time" of 24 to 36 months, amounted to $1,800,000, $1,850,000, and $2,850,000.

In January 2010, Sea Island Bank instructed Wilson to update his July 2009 appraisals and reevaluate the parcels assuming a reasonable marketing period of 12 months, as well as an appraisal "based on what [he] thought was the typical marketing ... an estimate of [24] to [36] months." Wilson stated that the 12-month time period was "what most sellers [were] requiring." Using the 24- to 36-month marketing periods, he appraised the properties to be valued at $1,590,000, $1,685,000, and $2,550,000. Using the 12-month marketing period provided by Sea Island Bank, Wilson appraised the properties at $1,030,000, $1,090,000, and $1,680,000.

The numbers from the 12-month marketing period and 24- to 36-month marketing periods, however, represented the same return.

---

[1] (Punctuation omitted.) *Trefren v. Freedom Bank of Ga.*, 300 Ga. App. 112, 113 (684 SE2d 144) (2009), citing *Fayette Promenade v. Branch Banking & Trust Co.*, 258 Ga. App. 323, 324 (574 SE2d 319) (2002).

Wilson relied upon comparable sales to arrive at the fair market value. Wilson took the independent analysis based upon the 24- to 36-month periods and applied discounts arising from a hypothetical purchaser's "reasonable expectation of certain costs [and] taxes" to account for time and marketability. These downward adjustments reflected eighteen months of carrying costs, including a fifteen percent deduction for developer/entrepreneurial profit, real estate taxes, and sales fees; one percent deduction for "miscellaneous"; and a discount rate of ten percent, which accounted for opportunity costs of the owner.

John Ganem appraised the property on behalf of Henderson Property Holdings in March 2010. Ganem testified that the fair market values of the parcels were $1,474,000, $1,656,000, and $2,325,000. He also determined that the three parcels as a single tract of land had a fair market value of $6,200,000.

After the hearing, the trial court entered an order confirming the foreclosure sales. In its order, the trial court determined that the properties sold for their true market values by adopting Wilson's appraisal. The court found the 12-month holding time reasonable in light of testimony that the carrying costs of the property exceeded $700,000. The trial court also took note of evidence of Sea Island Bank's subsequent sale of the property 28 days after the foreclosure sale and evidence that Henderson Property Holdings could not sell the property in late 2009 for $3,400,000 when given the opportunity by Sea Island Bank.

1. Henderson Property Holdings argues that the trial court erred in adopting "quick sale" values as evidence of "true market value." We disagree.

Georgia's confirmation statute provides that "[t]he court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale."[2]

> True market value is the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so.[3]

Courts may not use "quick sale" valuation in confirmation

---

[2] OCGA § 44-14-161 (b).

[3] (Punctuation omitted.) *Mundy Mill Dev. v. ACR Property Svcs.*, 306 Ga. App. 730, 731 (703 SE2d 137) (2010).

proceedings "because it presumes that 'true market value' may be construed to mean 'market value under quick sale conditions.' "[4] In the instant case, however, the value of the foreclosure sales reflects the price that would be obtained in a sale under usual market conditions. Wilson testified that the marketing time frame he relies upon varies depending on market conditions. For example, the time frame "could have been under [12] months" at the height of the market. Although Wilson stated that his typical marketing period is 24 to 36 months, he explained that almost no one in Chatham County was willing to buy or was able to obtain financing for commercial property with a plan to hold it for 36 months at the time of the foreclosures. Wilson emphasized that sellers are now requiring "a [12-]month listing agreement at most," which was the price paid at foreclosure by Sea Island Bank. Thus, a 12-month marketing period reflects a price that would be obtained in a sale under the usual market conditions. Brown's appraisal based on the 12-month holding period was not simply a deeply discounted figure to sell the property quickly; the figure consisted of the same rate of return which the seller would have realized during the longer 24- to 36-month marketing periods.[5]

Furthermore, the trial court also noted that "the amount paid by [Sea Island Bank] exceeded the amount received by them ($2,500,000) when they sold the property at the end of March 2010." Kenneth Rabitsch, the commercial lead for Sea Island Bank, testified that the $2,500,000 resale by the bank was "indicative of a quicker sale transaction" compared to the $3,800,000 figure bid by the bank at the foreclosure sale. Accordingly, the trial court did not improperly rely upon a "quick sale" valuation,[6] but rather upon the evidence presented by the Bank that its bid of $3,800,000 for the three properties was the true market value based on the current market conditions at the time of the sale. We find no error.

2. Henderson Property Holdings also contends that the trial court erroneously accepted an opinion of true market value that included deductions for collateral expenses. Henderson also argues that consideration of carrying costs is only appropriate in a bulk sales valuation, rather than a valuation of single parcels of property. We disagree.

This Court has held that closing costs, as well as extra costs a bank incurs in selling foreclosed properties separately, are considered collateral issues that are irrelevant in determining market

---

[4] *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 261 (424 SE2d 889) (1992).

[5] Compare with id. at 259 (explaining that the appraiser's discount of over 50 percent based on a "quick sale value" was excessive and did not constitute a true market value).

[6] See *Mundy Mill Dev.*, 306 Ga. App. at 733-734.

value.[7] Nevertheless, because deductions such as carrying costs and entrepreneurial profit "factor directly into the price a willing buyer would pay for the [p]roperty, taking them into account does not amount to consideration of issues collateral to the [p]roperty's true market value."[8] While the trial court considered Henderson Property Holdings's appraisal, the trial court expressly noted that the appraisal contained no deduction of any amount for expenses of carrying the property when the evidence showed that the carrying costs exceeded $700,000. Thus, the trial court did not err by relying on Wilson's appraisal. The downward adjustments made by Wilson were not of "the nature and amount of expenses and closing costs to be paid to others in connection with buying or selling [the property]."[9]

Wilson arrived at these numbers using his appraisal at the 36-month point from comparable sales and "back[ing] off the expenses that would require over the holding period to arrive at the lower value" because "the person purchasing and paying the [12-] month number would have the reasonable expectation of certain costs [and] taxes." We have recently held that trial courts may rely on a discounted cash flow analysis to determine the true market value of property sold in a nonjudicial foreclosure sale.[10] Similarly, Wilson's deductions were based on the time value of money, which is consistent with discounted cash flow analysis. Accordingly, Henderson Property Holdings's challenge is without merit.

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JULY 13, 2011 — 

*McCorkle & Johnson, Mathew M. McCoy, Thomas M. Gore*, for appellants.

*Brown Rountree, Charles H. Brown, Jesse A. Van Sant*, for appellee.

---

[7] See *Wheeler v. Coastal Bank*, 182 Ga. App. 112, 114 (1) (354 SE2d 694) (1987); *First Nat. Bank &c. v. Childress-Ross Properties*, 189 Ga. App. 765, 766 (377 SE2d 533) (1989).

[8] (Punctuation omitted.) *Greenwood Homes v. Regions Bank*, 302 Ga. App. 591, 595, n. 3 (692 SE2d 42) (2010).

[9] *Wheeler*, 182 Ga. App. at 114 (1).

[10] See *Greenwood Homes*, 302 Ga. App. at 595 (1) (c); *Blue Marlin Dev. v. Branch Banking & Trust Co.*, 302 Ga. App. 120, 122 (1) (690 SE2d 252) (2010).