## A11A1285. METRO LAND HOLDINGS INVESTMENTS, LLC et al. v. BANK OF AMERICA, N.A.

(716 SE2d 566)

MIKELL, Judge.

This case arises from the applications for confirmation of four foreclosure sales filed pursuant to OCGA § 44-14-161 by Bank of America, N.A. ("the Bank") against Metro Land Holdings Investments, LLC ("Metro Land"), JFD Builders, LLC and Loomis E. Deavours ("Appellants"), who guaranteed the underlying promissory notes.[1] Appellants appeal the trial court's final order confirming the sale of the four properties contending that the third property was not purchased at its true market value (as required by OCGA § 44-14-161 (b)). For the reasons that follow, we affirm.

In confirming a nonjudicial foreclosure sale under OCGA § 44-14-161, the trial court "shall require evidence to show the true market value[2] of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale."[3] The trial judge in a confirmation proceeding "sits as the trier of fact, and its findings and conclusions have the effect of a jury verdict."[4] Thus, "witness credibility and the weight of the evidence proffered by the parties at a confirmation hearing are to be judged by the trial court, and not this Court on appeal."[5] For this reason, we will not disturb

---

[1] The Bank originally filed applications for confirmation of five foreclosure sales, but withdrew its application as to the first property at the hearing.

[2] True market value "is the price which the property will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who wishes to buy, but is not under a necessity to do so." (Citation and punctuation omitted.) *Gutherie v. Ford Equip. Leasing Co.,* 206 Ga. App. 258, 259 (1) (424 SE2d 889) (1992).

[3] OCGA § 44-14-161 (b).

[4] (Footnote omitted.) *The Hudson Trio, LLC v. The Buckhead Community Bank,* 304 Ga. App. 324, 325 (696 SE2d 372) (2010).

[5] (Footnote omitted.) *Atreus Communities of America v. KeyBank Nat. Assn.,* 307 Ga. App. 716, 717 (706 SE2d 107) (2011).

the trial court's decision if there is any evidence to support it,[6] and we view the evidence in the light most favorable to the trial court's judgment.[7]

So viewed, the record shows that in 2006, Metro Land executed four promissory notes in favor of the Bank. Each promissory note was secured by lots of undeveloped property in the Summerlake and Bramlett Station subdivisions in Gwinnett County, as evidenced by the Deeds to Secure Debt and Security Agreements. Metro Land defaulted on the notes, and the Bank elected to declare the outstanding debt immediately due and payable. The Bank then foreclosed on the properties under power of sale provisions contained in the deeds to secure debt. On July 7, 2009, the four properties were sold at auction at separate foreclosure sales in Gwinnett County. In the third foreclosure sale, the Bank, as lienholder, purchased a parcel of eight undeveloped residential lots in the Summerlake subdivision in Gwinnett County for $233,850.

On July 29, 2009, the Bank reported the sales to a judge in the Superior Court of Gwinnett County and applied for confirmation of the four sales pursuant to OCGA § 44-14-161. Following a hearing, the superior court confirmed the sales. This appeal follows.

Appellants' sole enumeration of error is that the trial court erred in finding that the third property sold for its true market value because the written appraisal of the Bank's expert exceeded the amount bid by the Bank at the foreclosure sale.

At the hearing, the Bank presented the expert testimony of Scott R. Tonneson, an MAI-designated independent real estate appraiser, on the issue of true market value. Appellants called no witnesses and provided no expert testimony to rebut Tonneson's testimony as to valuation. Tonneson testified that he utilized a "Development Approach" in appraising the property based on its use as residential lots. According to Tonneson, this methodology requires a two-step process: first, the retail value of each lot is determined, and second, appropriate expenses and absorption rates are deducted from the retail value to arrive at the true market value.

Tonneson's written appraisal valued the eight lots comprising the third property at $237,551 as of July 7, 2009, an amount higher than the $233,850 foreclosure sale price. However, he stated at the hearing that he had revised his opinion subsequent to drafting the written appraisal because data he later obtained indicated that residential properties in the area were experiencing decreased sale

[6] *Trefren v. Freedom Bank of Ga.*, 300 Ga. App. 112, 114 (684 SE2d 144) (2009).

[7] *Fayette Promenade v. Branch Banking &c. Co.*, 258 Ga. App. 323, 324 (574 SE2d 319) (2002).

prices and absorption rates during the last six months of 2009, and that this subsequent data was relevant to his valuation of the third property as of the sale date. Tonneson's revised opinion of the true market value of the third property is approximately $234,000 or $29,200 per lot.[8] Tonneson explained that the written appraisal reflected an inflated true market value because a review of subsequent sales in the area revealed a downward trend in the value of undeveloped lots. Tonneson explained that his review of these comparable bulk sales and absorption rates revealed that his "value conclusion [in his written appraisal] was . . . very high at the date of value" because there was "minimal demand and . . . excess supply" of residential lots in that area. Tonneson then went on to opine that, based on this downward trend, the fair market value of the third property as of the date of the foreclosure sale could be as little as $25,000 per lot, or $200,000 for the third property as a whole.

On appellate review, "the test is not whether this court would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale."[9] Further, "Georgia law has long held that the trier of fact may believe or disbelieve all or any part of the testimony of any witness."[10] Tonneson "provided the court with the basis for his opinions. As it appears that his opinion was not based on sheer speculation, an appellate court cannot second guess any methodology utilized to reach the opinion."[11] Appellants did not provide any evidence or expert testimony to rebut Tonneson's appraisal, and the trial court was entitled to believe Tonneson's expert opinion that the fair market value of the third property as of the date of the foreclosure sale was lower than his initial written appraisal because of a downward trend in the real estate market. Given the foregoing, the record contained sufficient evidence to permit the trial court to determine that the Bank's winning bid at the foreclosure sale brought at least the true market value of the property.[12]

---

[8] The eight lots comprising the third property at a valuation of $29,200 per lot equals a total value of $233,600, which is less than the $233,850 foreclosure sale price.

[9] (Citation and punctuation omitted.) *Blue Marlin Dev. v. Branch Banking &c. Co.*, 302 Ga. App. 120, 122 (1) (690 SE2d 252) (2010).

[10] (Citation, punctuation and footnote omitted.) *Fuller v. Flash Foods*, 298 Ga. App. 217, 219 (679 SE2d 775) (2009).

[11] (Punctuation and footnote omitted.) *Fayette Promenade*, supra at 327.

[12] *BPI Constr. Co. v. Collective Fed. Sav. &c.*, 186 Ga. App. 324, 325 (367 SE2d 269) (1988). Compare *Belans v. Bank of America*, 303 Ga. App. 654, 656 (2) (694 SE2d 725) (2010) (reversing confirmation where appraiser did not testify and court relied solely on statements by counsel).

*Judgment affirmed. Smith, P. J., and Doyle, J., concur.*

DECIDED AUGUST 24, 2011.

*King & Spalding, Philip R. Green, Schreeder, Wheeler & Flint, John A. Christy*, for appellants.
*Troutman Sanders, Thomas E. Reilly, Claiborne B. Smith*, for appellee.