**THIRD DIVISION
MIKELL, P. J.,
MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**July 13, 2012**

# In the Court of Appeals of Georgia

A12A0361. GCCFC 2007-GGP ABERCORN STREET LIMITED
 PARTNERSHIP v. ABERCORN COMMON, LLP. et al.

MIKELL, Presiding Judge.

In this foreclosure case, GCCFC 2007-GGP Abercorn Street Limited
Partnership, the Lender,[1] appeals from the trial court's denial of its petition to confirm
the foreclosure on a Savannah shopping center based on the trial court's conclusion
that the Lender did not present evidence of the true market value of the property
because the Lender's expert appraised the "leased fee interest in the property" and not
the "fee simple interest."

---

[1] The Lender came to hold the Loan Documents on the $30,000,000 loan to
Abercorn Common, LLP through a series of assignments originating with the original
lender, Greenwich Capital Financial Products, Inc.

1. The procedure for confirmation of non-judicial foreclosure sales is set forth in OCGA § 44-14-161, which provides:

> (a) When any *real estate* is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the *real estate* does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the *land* is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.
>
> (b) The court shall require evidence to show the *true market value of the property sold* under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale.

(Emphasis supplied.)

The legislative intent of this statute was to give the debtor relief, which is provided by "requiring speedy judicial review of the notice, advertisement, and regularity of the sale; insuring that the property sold for a fair value; and protecting

debtors from deficiency judgments when the forced sale brings a price lower than fair market value." [2]

The Lender's sole enumeration of error is that "[t]he superior court erred by holding that OCGA § 44-14-161 (b) requires a petitioning creditor seeking confirmation of a foreclosure sale of a shopping center that is subject to numerous existing leases to retailers, as well as a ground lease, to present evidence of a hypothetical fee simple interest in the property – unencumbered by the leases – to obtain confirmation."

Although the Lender contends that our standard of review is de novo because this case involves the interpretation of a statute, apparently a reference to OCGA § 44-14-161, we disagree. First, if a statute is plain and susceptible of but one construction, the courts have no authority to place a different construction on it, but must apply it according to its terms. [3] We find OCGA § 44-14-161 to be such a statute. It specifically refers to "real estate" and "land" as the subject of the confirmation of sale procedure, not leased estates. Second, we find no argument made below by the

_____

[2] (Footnote omitted.) *Alliance Partners v. Harris Trust & Sav. Bank*, 266 Ga. 514 (1) (467 SE2d 531) (1996).

[3] *State Revenue Comm. v. Brandon*, 184 Ga. 225, 226 (1) (190 SE 660) (1937).

Lender that the statute was in need of interpretation, only that proof of the value of the "leased fee interest" instead of the value of the "fee simple interest" satisfied the requirements of the statute.[4] Therefore, our review of the trial court's determination that the Lender failed to produce evidence of the true market value[5] is whether the record contains any evidence to support the findings of the trial court, and we view the evidence in the light most favorable to the trial court's judgment.[6]

> Value on the date of sale is a factual question to be resolved by the trier of fact. In a proceeding for confirmation of a foreclosure sale of real property, the judge sits as a trier of fact, and his findings and conclusions have the effect of a jury verdict. Where the trial judge, sitting as the trier of the facts, hears the evidence, his finding based upon

---

[4] An appellate court need not consider arguments made for the first time on appeal. *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002).

[5] True market value "is the price which the property will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who wishes to buy, but is not under a necessity to do so." (Citation and punctuation omitted.) *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 259 (1) (424 SE2d 889) (1992).

[6] *Metro Land Holdings Investments, LLC v. Bank of America, N.A.*, 311 Ga. App. 498, 499 (716 SE2d 566) (2011); *Hammock v. Issa*, 310 Ga. App. 547, 550 (713 SE2d 717) (2011).

.

4

conflicting evidence is analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.[7]

So viewed, the evidence was that the Lender's appraiser, Joel Crisler, testified that

the Tax Assessor's Office estimates a market value for the fee simple interest. *I estimated a market value for the leased fee interest.* The fee simple interest, the valuation of the fee simple interest typically assumes a stabilized occupancy and that the tenant spaces are leased at market rent levels. . . . *[I]f all things were equal, a valuation of the fee simple interest would likely be higher than the valuation of the leased fee interest.* So it is correct that the Tax Assessor's Office estimated a higher value, but *they estimated a value for the fee simple interest in the property*, assuming everything was rented at market rates and that it had attained a stabilized occupancy. *I didn't estimate that in the appraisal. I estimated the value of the leased fee interest.*

(Emphasis supplied.)

Further, Crisler stated that he was asked to appraise "the leased fee interest, which is the property owner/landlord's interest subject to the existing leases which

---

[7] (Punctuation and footnote omitted.) *Henderson Property Holdings, LLC v. Sea Island Bank*, 310 Ga. App. 795 (714 SE2d 382) (2011).

encumber the various tenant spaces in the center." He appraised this interest as of January 4, 2011, at $19,920,000, with the income approach using a discounted cash flow analysis. He acknowledged that, using the sales comparison approach, he appraised the leased fee interest at $20,927,000. He also acknowledged that the tax assessor's valuation of the fee simple interest was $23,024,800, and that, in his opinion, this valuation could not be successfully challenged.

The attorney who conducted the foreclosure sale bid in the property, as he had been instructed by the Lender, at $20,500,000, the only bid received. He also testified that he had been authorized by the Lender to bid up to $27,000,000 for the property.[8]

The Lender also acknowledged that, in November 2010, Cousins Properties had offered to purchase the property for $23,000,000.

Abercorn Common produced evidence of its assessment of the true market value of the shopping center through appraiser Donald Pardue, Jr. Pardue, using the direct capitalization analysis on the income method of valuation, arrived at $22,160,000 as the true market value of the fee simple interest of the real estate.

---

[8] The statement of a bidder that he was prepared to bid more can be considered as evidence that the bid price was in fact below the market price. *Thomas v. Henry*, 150 Ga. App. 792, 793 (1) (258 SE2d 710) (1979).

2. Our opinion, of course, speaks only to facts presented in the present appeal. We do not hold that the "leased fee" interest can never be equivalent to the true market value. It would almost always be relevant to market value.[9] The statute requires the party which foreclosed to convince a superior court judge, by a preponderance of the evidence, that the property sold for its "true market" value.[10] Clearly, in the case at bar, the foreclosing party failed to convince this superior court judge. Perhaps if the appraiser for the foreclosing party had himself appraised the fee simple interest, and then explained how that value should be discounted, or increased, by the leased fee interest, the trial court would have been persuaded. But we are not willing to hold as a matter of law that the trial courts must always accept the leased

---

[9] We are aware that the leased fee interest may be less than the fee simple interest, i.e. the value of the unencumbered land and improvements, but it could be, in theory, higher than the value of the fee. The latter circumstance might occur if the rent rolls were full, and the leases were all made for long terms, at above market rates, with financially solvent tenants.

[10] The Lender's argument that the trial court erred in not considering Pardue's testimony in determining true market value is unavailing since it was the Lender's burden to show that the property brought true market value and consideration of its evidence alone showed that it had not fulfilled this burden.

7

fee interest as being the "true market" value. The trial court's conclusions are supported by some evidence in the record so we must affirm the judgment.[11]

*Judgment affirmed. Miller and Blackwell, JJ., concur.*

---

[11] See, e.g., footnote 8 above.