**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**August 29, 2013**

# In the Court of Appeals of Georgia

A13A1259. GEORGIA LIMITED PARTNERS, LLC et al. v. CITY
NATIONAL BANK.

ELLINGTON, Presiding Judge.

City National Bank auctioned Georgia Limited Partners, LLC's property at foreclosure and then initiated confirmation proceedings. After a hearing, the Superior Court of Cobb County determined that the auction price was equal to or greater than the fair market value of the property and granted the bank's application for confirmation. Georgia Limited Partners, LLC, and Paul Steinfurth (collectively "the debtor")[1] appeal, contending that the bank failed to carry its burden of proving the fair market value of the property and, therefore, that the trial court erred in granting the bank's application. For the reasons explained below, we affirm.

---

[1] Paul Steinfurth guaranteed the debt.

Georgia law provides that, when a party holding a security interest in real property pursues non-judicial foreclosure, the secured party may not obtain a judgment for any deficiency unless the secured party timely reports the sale and obtains confirmation of the sale from the superior court in which the land is located. OCGA § 44-14-161 (a). "The court shall require evidence to show the true market value of the property sold under the powers [contained in a security deed or other lien contract] and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale." OCGA § 44-14-161 (b). Our appellate courts have read OCGA § 44-14-161 (b) "to require proof of true market value under the usual market conditions for sales of such property." (Citations, punctuation, and emphasis omitted.) *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 261 (1) (424 SE2d 889) (1992). Because foreclosure sales are forced sales and are conducted under conditions that differ from the ordinary market for the property in question, they "notoriously fail to bring the true market price of the property." (Citations and punctuation omitted.) Id. Thus, in order to achieve the legislative purpose of providing debtor relief by limiting and abating deficiency judgments, Georgia's confirmation statute requires evidence of fair market value other than the public sale price. Id.

2

"The trial judge in a confirmation proceeding sits as the trier of fact, and its factual findings and conclusions have the effect of a jury verdict. Thus, witness credibility and the weight of the evidence proffered by the parties at a confirmation hearing are to be judged by the trial court, and not this Court on appeal." (Citation and punctuation omitted.) *River Walk Farm v. First Citizens Bank & Trust*, _ Ga. App. _ (741 SE2d 165) (2013). For this reason, we will not disturb the trial court's findings of fact if there is any evidence to support them, and we view the evidence in the light most favorable to the trial court's judgment. Id.; *Howser Mill Homes v. Branch Banking & Trust*, 318 Ga. App. 148, 149 (733 SE2d 441) (2012). "We apply a de novo standard of review[, however,] to any questions of law decided by the trial court." *Howser Mill Homes, LLC v. Branch Banking & Trust Co.*, 318 Ga. App. at 149. See also *White Oak Homes v. Community Bank & Trust*, 314 Ga. App. 502, 503 (724 SE2d 810) (2012) (The appellate court is not bound by the trial court's conclusions of law, which are subject to de novo review.).

This case concerns Notting Hills, an apartment complex located in Marietta. The complex is comprised of 27 buildings, plus a clubhouse, and has over 300 units. The debtor purchased the property in 2008 and defaulted on a deed to secure debt in 2011, when it owed over $11 million to the bank. The bank foreclosed on the

3

property on December 6, 2011, and auctioned the property on June 5, 2012. The bank submitted the only bid and bought the property for $9.5 million.

At the confirmation hearing, the bank presented two appraisals, one by Casey Lyons of the Buckhead Advisory Group and one by Scott Richards of Cushman & Wakefield. Lyons testified that he considered these market value indications: a sales comparison approach, an income approach, an effective gross income multiple, and a net operating income per unit analysis. In addition to other research, Lyons compared the property to five other apartment complexes that he determined to be comparable properties for the sales comparison approach. In Lyons' opinion, the property was worth $5.9 million as of December 9, 2011, when it had an occupancy rate of approximately 30 percent. At the time of Lyons' analysis, the comparable properties in term of rents had occupancy rates of 70 to 80 percent. Lyons gave a "prospective stabilized value" of $8.2 million, assuming an occupancy rate of 82 percent, which he expected to take approximately two years to reach.

The other appraiser, Richards, testified that he based his valuation on a sales comparison analysis and an income analysis. He based the sales comparison analysis on eight comparable properties, which had occupancy rates ranging from 65 percent to 97 percent. Richards opined that the fair market value of the subject property was

$5.25 million as of April 26, 2012, when the occupancy rate was 26 percent. In his opinion, the stabilized value of the property was $6.8 million, assuming an occupancy rate of 89 percent projected to be achieved within one year. Richards opined that an increased occupancy rate would generally tend to increase his valuation of a property, but qualified that statement by noting that the occupancy rate is not always material and "there's no one-to-one ratio" between occupancy and property value.

The trial court determined that the price the bank paid for the property, $9.5 million, was equal to or greater than the fair market value of the property on the auction date. On appeal, the debtor contends that "no sufficient evidence was presented from which the trial court could have determined the property's true market value[.]" In particular, the debtor contends that both of the appraisers compared the property to other properties that were not truly comparable because their occupancy rates were much higher than the occupancy rate of the subject property. In addition, the debtor contends that the appraisers' projected stabilized values, which differed by more than $1 million, were speculative and unreliable and failed to provide evidence of the property's value under the usual market conditions for sales of such property.

The record shows that both appraisers took into account the differences among the occupancy rates of the subject property and the comparable properties. Both

5

estimated the prospective value of the subject property assuming its return to typical occupancy rates. Although their valuations were not identical, there is no evidence of record that, even under the usual market conditions, the property was worth more than the bank paid at auction. More importantly, in reviewing the trial court's decision, "the test is not whether this [C]ourt would have accepted [a particular appraisal] as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale." (Punctuation and footnote omitted.) *Wilson v. Prudential Indus. Properties*, 276 Ga. App. at 181 (1). Because the trial court's findings are supported by evidence of record in this case, we must affirm the trial court's order confirming the foreclosure sale. *Henderson Property Holdings v. Sea Island Bank*, 310 Ga. App. 795, 796-797 (1) (714 SE2d 382) (2011); *Atreus Communities v. KeyBank Nat. Assn.*, 307 Ga. App. 716, 720 (706 SE2d 107) (2011); *Mundy Mill Dev. v. ACR Property Svcs.*, 306 Ga. App. 730, 734 (703 SE2d 137) (2010); *Wilson v. Prudential Indus. Properties*, 276 Ga. App. at 181-182 (1).[2]

---

[2] Cf. *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. at 261 (1) (reversing grant of confirmation where the trial court's conclusion that the subject property brought its true market value was not supported by any evidence in the record, once the flawed "quick sale" valuation was eliminated from consideration).

*Judgment affirmed. Phipps, C. J., concurs. Branch, J., concurs in the judgment only.*