**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**January 15, 2014**

# In the Court of Appeals of Georgia

A13A2021. LOST LAKE DEVELOPMENT CORP., LLC. v. COMMUNITY & SOUTHERN BANK

MILLER, Judge.

This case arises from an application for confirmation of a foreclosure sale filed by Community & Southern Bank ("Community Bank") against Lost Lake Development Corporation, LLC ("Lost Lake") and Jeff Matthews. Following the confirmation hearing, the trial court found that the property was sold for at least its true market value and confirmed the foreclosure sale pursuant to OCGA § 144-14-161. Lost Lake appeals, contending that the trial court erred in finding that the property sold for at least its true market value at the foreclosure sale. Discerning no error, we affirm.

The trial court is the trier of fact in a confirmation proceeding, and an appellate court will not disturb its findings if there is *any evidence* to support them. Furthermore, we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment.

(Citation and punctuation omitted; emphasis supplied.) *Greg A. Becker Enterprises, Ltd. v. Summit Investment Mgmt. Acquisitions I, LLC*, 314 Ga. App. 721 (725 SE2d 841) (2012).

So viewed, the evidence shows that Lost Lake executed a promissory note ("Note") and Security Deed for a closed end line of credit.[1] Between 1998 and 2009, the Note was extended, renewed and/or modified numerous times for varying principal amounts, culminating in a final renewal of the loan on July 3, 2009 in the principal amount of $1,200,000.

After Lost Lake defaulted on the Note, Community Bank[2] instituted nonjudicial foreclosure proceedings on the secured property in accordance with the power of sale authorized in the Security Deed. Community Bank conducted the initial foreclosure sale in April 2011, bought the property for $300,000 as the high bidder, and subsequently instituted a foreclosure confirmation proceeding in the Superior Court

---

[1] In March 2004, Matthews unconditionally guaranteed the Note and Lost Lake's future debts.

[2] The Security Deed was assigned to Community Bank by the Federal Deposit Insurance Corporation, in its capacity as receiver for First National Bank of Georgia ("FNBG"). FNBG was the successor in interest to West Georgia National Bank, the original lender.

of Carroll County. At the initial confirmation hearing, Community Bank's appraiser testified that the property was worth $300,000, while Lost Lake's appraiser testified that the property was worth $530,000 as of April 2011. Accordingly, the trial court ordered a resale of the property.

Community Bank then re-foreclosed on the property on September 4, 2012. The resale resulted in the sale of the property to Community Bank for $530,000 as the highest bidder for cash. Community Bank subsequently instituted a second foreclosure confirmation proceeding.

At the second confirmation hearing, Community Bank's appraiser testified that the property consisted of a developed subdivision with a 4-acre fishing lake and 53 lots ranging in size from 5,170 to 20,000 square feet with an average lot size of 9,200 square feet. The appraiser further stated that the property was next to or near an elementary school, middle school, recreational center and senior center, was not too far from I-20, and would provide nice, affordable homes for first time buyers and senior citizens.

The appraiser based his findings on comparable multi-lot listings and sales between July 2011 and June 2012. The comparable sales and listings ranged from $500 per lot to $9,000 per lot. Based on these comparable sales and listings, the

appraiser opined that the true market value of the property on September 4, 2012, the date of the second foreclosure sale, was $150,000. Accordingly, the appraiser testified that the property sold for at least its true market value at the foreclosure sale based on Community Bank's $530,000 bid.

Lost Lake presented the testimony of a local commercial real estate agent at the second confirmation hearing. The agent testified that he was familiar with the property, and he estimated that the property had a reasonable retail value of between $15,000 and $20,000 per lot. The agent further testified, however, that the lots would not sell at that price in a block of two to five lots. Accordingly, the agent opined that the per-lot value of the lots on September 4, 2012 was $12,000, with a total value for the property of $636,000.

In its sole enumeration of error, Lost Lake contends that the trial court erred in finding that the property sold for at least its true market value at the foreclosure sale. We disagree.

OCGA § 44-14-161 sets out the process for obtaining an order of confirmation and approval following a foreclosure sale under powers contained in security deeds, mortgages or other lien contracts, including the requirement of evidence showing that the property sold for its true market value. OCGA § 44-14-161 pertinently provides:

…

(b) The court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale.

This Court has held that OCGA § 44-14-161 (b) requires "proof of true market value under the usual market conditions for sales of such property." (Citations, punctuation, and emphasis omitted.) *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 261 (1) (424 SE2d 889) (1992). Because foreclosure sales are forced sales and are conducted under conditions that differ from the ordinary market for the property in question, they "notoriously fail to bring the true market price of the property." (Citations and punctuation omitted.) Id. Thus, Georgia's confirmation statute requires evidence of fair market value other than the public sale price. See Id. at 259-261 (1).

Here, the evidence showed that the property sold for $530,000 at the second foreclosure sale, which yielded a $10,000 per lot sales price. The evidence also showed that there is a large supply of developed residential lots in Carroll County; comparable lot sales between July 2011 and February 2012 ranged from a low of

5

$800 per lot to a high of $8,500 per lot; and the average retail lot value for the Lost Lake lots was $5,500.

Community Bank also presented evidence of the projected sales price for the lots over the next four years based on the history of the property and the current market conditions. Using that analysis, Community Bank's appraiser projected that zero lots would sell in the next 12 months; 15 lots would sell in year two for $5,500 per lot; 15 lots would sell in year three for $6,600 per lot; and the final 23 lots would sell in year four at a projected sales price of $6,600 per lot, resulting in a total projected gross sales revenue of $333,300 over four years.

As set forth above, some evidence showed that the fair market value of the Lost Lake lots ranged from $5,500 to $6,600 per lot, which was considerably less than the actual sales price of $10,000 per lot. Although Lost Lake's expert opined that the per lot value of the property was $12,000, the agent admitted that he did not look at any comparable sales or apply any appraisal methods in reaching his opinion. The agent also admitted that he could not point to any specific comparables or sales that would support his per-lot valuation of the property, or any sales of lots over the past year that yielded more than $2,800 per lot.

In reviewing the trial court's decision, "the test is not whether this [C]ourt would have accepted [Lost Lake's expert's appraisal and testimony] as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale." (Punctuation and footnote omitted.) *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180, 181 (1) (622 SE2d 890) (2005). Moreover, where as here, "the appraiser's opinion was not based on sheer speculation, we will not second guess any methodology utilized to reach the opinion." (Punctuation and footnote omitted.) *Mundy Mill Dev., LLC v. ACR Property Svcs., LP*, 306 Ga. App. 730, 734 (703 SE2d 137) (2010); see also *Wilson*, supra, 276 Ga. App. at 181-182. The record contained sufficient evidence to permit the trial court to find that the sale brought at least the true market value of the property. *Atreus Communities v. KeyBank Nat. Assn.*, 307 Ga. App. 716, 720 (706 SE2d 107) (2011); *Mundy*, supra, 306 Ga. App. at 730. Accordingly, we must affirm the trial court's order confirming the foreclosure sale.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

7