A94A2106. RESOLUTION TRUST CORPORATION v. MORROW AUTO CENTER, LTD. et al.
(454 SE2d 138)

BIRDSONG, Presiding Judge.

This is a suit for confirmation of a foreclosure sale and deficiency. Appellant Resolution Trust Corporation (RTC) foreclosed on a development property in the Atlanta metropolitan area. The original loan amount was $725,000. The amount of default is not cited to us nor is it stated in RTC's demand letter or its petition, but the default was more than the $425,000 for which RTC bought the property at its foreclosure sale. In its order denying confirmation of the sale, the trial court recited that the appraiser/witness for RTC testified that the market value for the property at the time of sale was $425,000, whereas two appraisers for Morrow Auto Center testified that the market value at the time of sale was $812,000 and $790,000.

The trial court also denied a resale. On appeal, RTC contends a resale is authorized as a matter of law by OCGA § 44-14-161 (c) if the property did not sell for its true market value and if, as in this case, the trial court made no finding of bad faith. *Held*:

1. The trial court did not err in denying confirmation. See OCGA § 44-14-161.

2. OCGA § 44-14-161 (c) provides: "The court *may* order a resale of the property *for good cause shown.*" (Emphasis supplied.) This statute confers upon the trial court a legal discretion in determining whether to order a resale. *Govt. Nat. Mtg. Assn. v. Belue*, 201 Ga. App. 661 (411 SE2d 894).

RTC contends resale is authorized as a matter of law under *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 261 (424 SE2d 889), where we held: "Given that [the creditor] did not prove that it sold the property for true market value but did obtain an appraisal (albeit a fatally flawed one) before the sale and did sell the property for an amount equal to that appraisal, a resale would be authorized." *Gutherie* cites *Adams v. Gwinnett Commercial Bank*, 140 Ga. App. 233 (230 SE2d 324), aff'd, 238 Ga. 722 (235 SE2d 476); *Gutherie* further cites *Davie v. Sheffield*, 123 Ga. App. 228 (180 SE2d 263).

According to *Adams*, this court in *Davie* held that "[a] failure to sell for the true market value constitutes good cause for ordering a resale." *Adams* at 234 (2). According to *Gutherie*, the *Davie* case held that "resale may be had for mere inadequacy of price." *Gutherie* at 262 (2). In fact, in *Davie*, confronted with a contention that the court could not order a resale for mere inadequacy of price, we held that under previous statutory law, mere inadequacy of price was not a sufficient reason to order a resale, but under present law the court "*may* order a re-sale" (id. at 230; emphasis supplied) for several reasons, "including failure to sell [at the property's] true market value." Id. The headnote in *Davie* states: "The court *may* . . . order its resale for good cause shown, which *may* be the inadequacy of the price received for the property." (Emphasis supplied.) These are permissive statements only, and they are a far cry from the mandatory inference made by RTC from *Gutherie's* and *Adams'* later characterizations of *Davie*. The holding in *Davie* should not be taken out of its true context and is not to be converted to a holding that "good cause" for resale is shown and a resale is demanded whenever a foreclosure sale fails to bring true market value. This would obliterate the statute, would remove the trial court's discretion, and would encourage creditors to engage in any unfair practice at foreclosure sale, with the only penalty being a possible resale.

The language of the confirmation statute places the burden of proof on the creditor not only to show that the sale brought true market value of the property (*Wheeler v. Coastal Bank*, 182 Ga. App. 112, 114 (354 SE2d 694)), but also to show good cause for a resale, and the statute vests "considerable discretion" in the trial court in this determination. *Five Dee Ranch Corp. v. Fed. Land Bank of Co-*

*lumbia*, 148 Ga. App. 734 (2) (252 SE2d 662). The statute does not *entitle* the creditor to a resale, either for mere failure to show the sale brought true market value, for a mere "flawed" appraisal, or for any reason. The provision that resale "may [be granted] for good cause shown" (§ 44-14-161 (c)) means there is no presumption in favor of resale and there is no entitlement to a resale. The statutory language authorizing resale is entirely permissive and not mandatory.

Moreover, the statute does not define what constitutes "good cause," does not require a finding by the trial court of bad faith or negligence in the appraisal or sale, and does not even require evidence of bad faith or negligence. We have declined to set restrictions on the trial court's discretion in denying resale, for to set restrictions would be to require evidence of misfeasance, malfeasance, or defect in the sale before a resale can be denied, which would put the burden of proof on the *debtor*. To the contrary, we have held: "Where no 'good cause' has been shown which would demand a resale, there is no abuse of the exercise of the trial court's discretion, as a matter of law" (*Five Dee Ranch Corp.*, supra) and we have repeatedly held that the burden to show "good cause" which "*may*" authorize a resale is on the creditor. *Wheeler*, supra. We have held in particular cases that a resale was "authorized," but this does not constitute a holding that a resale was *demanded* in those cases or that there would be any "entitlement" to resale in other cases with similar circumstances. Discretion to grant a resale is discretion to deny a resale. There are special reasons that the issues of "good cause" and resale are left to the "considerable discretion" (*Five Dee Ranch Corp.*, supra) of the trial court, as this case proves.

RTC's only witness to prove the sale brought true market value was the appraiser who determined value at the price RTC paid for the property at its own sale: $425,000. This appraiser did not use comparable sales from the proximate metropolitan Atlanta vicinity and apparently did not consider it significant that Morrow Auto Center is located in an area of upscale automotive businesses. Instead, she used sales of "similar" properties in other towns in Georgia with much lower traffic rates and sales rates. Morrow Auto Center is located next door to a property which sold to a Cadillac dealer for $42 per square foot with planned renovations of $1.4 million, but RTC's appraiser did not consider this sale to be relevant. RTC's appraiser claimed not to have known about the recent sale of a Ford dealership two sites away from Morrow Auto Center, at $63 per square foot. Instead, she used rental rates of $5.25 per square foot to value Morrow Auto Center, based on "similar" properties in other towns. Morrow Auto Center's appraisers valued Morrow Auto Center in excess of $50 per square foot, similarly to the Cadillac and Ford dealership properties nearby.

Further, the Clayton County tax assessment of the subject property was $812,000 from 1991 to 1994. The tax assessor valued the land at $272,000 and valued the building at $540,000. RTC's appraiser justified her appraisal of only $425,000 for the entire property, land and building, by speculating that the tax assessment would have been much lower if Morrow Auto Center had challenged it. In fact, Morrow Auto Center twice challenged those tax assessments, and lost. RTC's appraiser claimed, however, not to have known about those challenges.

As proof of its "good faith," which it says demands a resale, RTC offers the fact that the property sold — to itself — for precisely RTC's appraised value. RTC says its appraiser has much higher qualifications than do the appraisers for Morrow Auto Center and that she spent more time investigating and analyzing the value of the subject property. These assertions obviously add nothing to the perception of RTC's "good faith"; they certainly do not constitute "good cause" to authorize a resale.

3. RTC contends that a mere difference in opinion as to value by unimpeached expert witnesses is not sufficient cause to deny resale. RTC thus insists it is entitled to a resale as a matter of law when there is "merely" a failure to bring true market value. As noted earlier, a holding that if a sale fails to bring true market value the creditor is entitled to resale, would obliterate the statute and remove the trial court's discretion and would actually encourage creditors to engage in unfair practices.

The trial court's statement was that it found all expert witnesses credible and not materially impeached, but that it was not convinced the property brought true market value and that RTC did not prove by a preponderance of evidence that it sold the property for fair market value. This was merely a statement that RTC did not prove the sale brought true market value. The question whether to grant a resale is a separate matter. *There is no entitlement to resale.* The fact that the trial court finds a witness unimpeached on the issue of true market value does not control the issue of resale. The trial court held that "based upon the evidence presented . . . at the confirmation hearing, this court does not find good cause shown and will not order a resale." OCGA § 44-14-161 (c) gives the trial court broad discretion to grant or deny a resale; on appeal we determine only whether that discretion was abused. Traditionally, where a trial court is vested by statute with broad discretion, appellate courts do not disturb that exercise of discretion unless it is clearly, patently, and manifestly abused. The discretion of the trial court in denying a resale in this case was not abused.

*Judgment affirmed. Blackburn and Ruffin, JJ., concur.*

DECIDED JANUARY 6, 1995 —
RECONSIDERATION DENIED FEBRUARY 6, 1995.

McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Carol V. Clark, Linda S. Finley, for appellant.

Oliver, Duckworth, Sparger & Winkle, G. Robert Oliver, for appellees.