A11A1620. GREG A. BECKER ENTERPRISES, LTD. et al.
v. SUMMIT INVESTMENT MANAGEMENT ACQUISITIONS
I, LLC.
(725 SE2d 841)

MILLER, Judge.

This case arises from an application for confirmation of a foreclosure sale filed by Summit Investment Management Acquisitions I, LLC ("Summit") against Greg A. Becker Enterprises, Ltd.; Greg A. Becker; Granite Mountain Motor Sports, Inc.; LKB Enterprises, Inc.; and Stone Mountain Motor Sports, Inc. (collectively "Becker"). Following a confirmation hearing, the trial court denied the application to confirm the sale, but found good cause had been shown to order a resale of the property in accordance with OCGA § 44-14-161 (c). Becker appeals, contending that the trial court (1) abused its discretion in ordering a resale, (2) applied an incorrect legal standard in reaching its decision, and (3) erred in denying the post-hearing motion to reopen the evidence. We discern no error and affirm.

> The trial court is the trier of fact in a confirmation proceeding, and an appellate court will not disturb its findings if there is any evidence to support them. Furthermore, we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment.

(Citations and punctuation omitted.) *Statesboro Blues Dev. v. Farmers &c. Bank*, 301 Ga. App. 851, 852 (690 SE2d 205) (2010).

So viewed, the undisputed evidence shows that on December 20, 2006, Greg A. Becker Enterprises, Ltd. executed a "Deed to Secure Debt, Assignment of Rents and Security Agreement" ("Security Deed") to secure repayment of two promissory notes in the total principal amount of $3,485,000. Pursuant to the Security Deed, the lender, Alpha Bank & Trust, acquired a security interest in Becker Enterprises's real property located at 2060 Ross Road in Gwinnett

County. Greg A. Becker, Granite Mountain Motor Sports, Inc., LKB Enterprises, Inc., and Stone Mountain Motor Sports, Inc. executed guarantees covering the Promissory Notes.

In October 2008, the Federal Deposit Insurance Corporation ("FDIC") was appointed Receiver of Alpha Bank. Thereafter, the FDIC assigned Becker's Security Deed to Summit. Becker defaulted on the Promissory Notes, and the balance owed on the debt was $3,403,964.92. Summit initiated a proceeding to foreclose upon Becker's real property in accordance with the power of sale authorized in the Security Deed.

The foreclosure sale occurred on August 3, 2010. There were no other bidders at the foreclosure sale, and the property was knocked down and sold to Summit for $1.1 million. Since the foreclosure sale did not bring the amount of the debt owed, on September 1, 2010, Summit timely filed an application for confirmation and reported the sale to the trial court judge pursuant to OCGA § 44-14-161 (a).

At the confirmation hearing, the parties presented the testimony of their respective real estate appraisers, who gave opinions regarding the true market value of the property on the date of the sale. Summit's appraisers testified that using the cost and sales comparison valuation methods, they valued the property to be $1.1 million. Summit's appraisers conceded on cross-examination, however, that they had inspected only the exterior of the building, did not access and inspect the interior of the building, and did not take measurements to determine the accurate square footage of the building. Summit's appraised value was based upon an inaccurate estimate that the building was approximately 24,912 square feet. Summit's supervising appraiser agreed that more square footage would result in a higher appraised value.

Becker's appraiser testified that the income and sales comparison valuation methods were more applicable in rendering an accurate valuation. Applying those methods, he valued the property to be $1.425 million. Becker's appraiser stated that he had inspected and measured the interior of the building in gathering the information for his appraisal. He testified that the building measured a total of 27,323 square feet.

Following the hearing, the trial court entered a detailed final order with findings of fact and conclusions of law. The trial court specifically found that the testimony of Becker's appraiser was more reasonable and credible than that of Summit's appraisers. The trial court cited the failure of Summit's appraisers to gain access inside the property in the performance of their valuation, but further determined that the failure did not establish a lack of good faith. The trial court found that Summit's lack of access was caused by the contentious relationship between the parties. In light of the disparity

between the appraisal valuations, and its determination that the $1.425 million valuation of Becker's appraisal was more credible, the trial court found that the property failed to sell for its true market value at the foreclosure sale. The trial court therefore denied confirmation of the foreclosure sale and concluded that good cause had been shown to order a resale of the property in accordance with OCGA § 44-14-161 (c).

1. Contrary to Becker's contention of error, the trial court was authorized to order a resale of the property based upon the evidence and circumstances presented.

OCGA § 44-14-161 (c) pertinently provides that the trial court "may order a resale of the property for good cause shown." Under this statutory provision, the trial court is vested with "considerable discretion" in determining whether to order a resale. *Resolution Trust Corp. v. Morrow Auto Center*, 216 Ga. App. 226, 227-228 (2) (454 SE2d 138) (1995). "[T]he statute does not define what constitutes 'good cause' " and "does not . . . require evidence of bad faith or negligence." (Punctuation omitted.) Id. at 228 (2). We have declined to establish restrictions on the trial court's discretion in determining whether the circumstances warrant a resale. Id. Under circumstances similar to those in the instant case, in which the appellee relied upon a fatally flawed appraisal and failed to prove that it sold the property for true market value, we held that a resale was authorized. See *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 261-262 (2) (424 SE2d 889) (1992).

Becker nevertheless argues that Summit had actual knowledge that its appraisal was fatally flawed, and thus, failed to show good cause for a resale. In support of its argument, Becker relies upon conflicting evidence that a prior appraisal indicated that the building was nearly 4,000 square feet larger than the estimate set forth in Summit's appraisal. However, there was no evidence showing that the Summit appraisers had reviewed the prior appraisal before they prepared their appraisal report. Summit's appraisers testified that since they did not have access inside the building, they relied on tax records to estimate the square footage.

Although Becker further points to evidence that Summit's appraisers did not take steps to contact him or his counsel to gain access inside the building, there was evidence supporting the trial court's finding that Summit's lack of access was due to the parties' contentious relationship. Significantly, Summit's agent testified that Becker would not talk to him, and that he did not insist upon gaining access since he did not want to cause any further conflict.

Notwithstanding any conflicts in the hearing testimony, the trial court was authorized to find that there had been no showing of a lack of good faith in Summit's conduct of the foreclosure proceedings.

Since the evidence supported a finding that Summit did not intentionally sell and buy the property at a price less than the true market value, the trial court did not abuse its discretion in ordering a resale. See *Adams v. Gwinnett Commercial Bank*, 140 Ga. App. 233, 234-235 (3) (230 SE2d 324) (1976).

2. There likewise is no merit in Becker's contention that the trial court applied an incorrect legal standard in its determination to order a resale. The record does not support Becker's claim that the trial court erroneously required him to make a showing of bad faith. To the contrary, the record shows that the trial court's finding that the evidence "[did] not establish a lack of good faith on the part of [Summit]" pertained to its relevant determination that Summit had not acted intentionally to sell the property at a price less than the true market value in order to seek confirmation and a deficiency judgment. See, e.g., *Adams*, supra, 140 Ga. App. at 235 (3). The trial court's order established that it applied the proper "good cause" standard in its decision to order a resale.

3. Lastly, Becker has not shown that the trial court abused its discretion in denying his post-hearing motion to reopen the evidence.

"The trial court has the discretion whether or not to allow the party to re-open the evidence in its case-in-chief. This [C]ourt will not reverse unless there has been an abuse of that discretion." (Citations and punctuation omitted.) *Nationsbank, N.A. v. Tucker*, 231 Ga. App. 622, 624 (1) (c) (500 SE2d 378) (1998).

Becker contends that he should have been allowed to submit additional evidence as to the amount of the debt in response to Summit's improper closing arguments regarding the existence of the indebtedness and the deficiency. As Becker acknowledges, however,

> [t]he confirmation proceeding is a statutory proceeding . . . originated as a means of protecting the debtor from being subject to double payment in cases where the property was purchased for a sum less than its fair market value. The duty of the trial court is to test the fairness of the technical procedure of the actual sale and to insure that it brought at least the true market value; *the statute does not undertake to decide controversies between parties as to the amount of the debt, side agreements, or matters in defense of default or in denial of indebtedness, or which might have been the basis of an injunction preventing the foreclosure sale. . . .* Except as to the confirmed amount of the sale, it does not establish the liability of any party with regards to the indebtedness.

(Citation and punctuation omitted; emphasis supplied.) *Dorsey v. Mancuso*, 249 Ga. App. 259, 261 (547 SE2d 787) (2001). Since the

confirmation proceeding is not intended to address the existence or amount of the indebtedness, id., the additional evidence that Becker sought to submit was inadmissible. It thus follows that the trial court properly refused to reopen and accept the additional evidence. Moreover, notwithstanding Summit's closing arguments making reference to the amount of the debt, the record does not show that the trial court considered the improper reference in its decision. See *Cannon v. Boesger*, 172 Ga. App. 488 (2) (323 SE2d 687) (1984) ("Where a case is tried before a judge without a jury, it is presumed that judgment was rendered only upon the competent and legal evidence before him[.]") (citations and punctuation omitted).

Becker also claims that he should have been allowed to present additional evidence concerning Summit's lack of diligence in inspecting the property. However, Becker had already elicited hearing testimony addressing that issue. As such, any additional evidence would have been merely cumulative of that which had already been presented. "[T]he trial court did not abuse its discretion in excluding this alleged rebuttal evidence as cumulative." (Citation omitted.) *Hall County v. Merritt*, 233 Ga. App. 526, 529 (3) (504 SE2d 754) (1998).

Since no error has been shown, we must affirm the trial court's decision.

*Judgment affirmed. Ellington, C. J., and Doyle, P. J., concur.*

---

DECIDED MARCH 12, 2012 — 

*Thompson, O'Brien, Kemp & Nasuti, Aaron M. Kappler, Kevin S. Kovalchik*, for appellants.

*Schreeder, Wheeler & Flint, Debbie A. Wilson*, for appellee.