**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 13, 2012**

# In the Court of Appeals of Georgia

A12A0169. A12A0170. NICHOLSON HILLS DEVELOPMENT, DI-008
LLC et al. v. BRANCH BANKING & TRUST COMPANY DI-009
and vice versa.

ELLINGTON, Chief Judge.

This case arises from an application for confirmation of a non-judicial

foreclosure sale filed by Branch Banking & Trust Company ("BB&T") against real

property serving as collateral for a loan in favor of Nicholson Hills Development,

LLC and R. Millard Bowen, as guarantor (collectively, "Nicholson Hills"). Nicholson

Hills objected to the confirmation on two grounds: (1) that BB&T failed to meet the

statutory prerequisites of OCGA § 44-14-162 (a), requiring it to advertise the sale in

both, as opposed to just one, of the counties occupied by the real property at issue, and

(2) that the sale failed to bring the true market value of the property. Following a

limited hearing, which by stipulation of the parties consisted of oral argument related

only to the adequacy of the advertisement, the trial court held that the plain language of OCGA § 44-14-162 (a) required BB&T to advertise the foreclosure in both counties. It thereafter denied the application to confirm the foreclosure sale and sua sponte ordered the property to be resold pursuant to OCGA § 44-14-161 (c). The parties cross-appealed, with BB&T challenging the trial court's interpretation of OCGA § 44-14-162 (a) and Nicholson Hills challenging the trial court's ordering of a resale without first conducting an evidentiary hearing. For the reasons set forth below, we affirm in part, vacate in part, and remand this case for additional proceedings consistent with this opinion.

The following facts are undisputed. In February 2005, Nicholson Hills executed a promissory note with BB&T in a principal amount exceeding $5,631,250 (the "Note"). The Note was secured via security deed by a large tract of real property located in both Forsyth and Dawson counties (the "Property"). Ultimately, Nicholson Hills defaulted on the Note and BB&T commenced foreclosure proceedings pursuant to the power of sale contained in the security deed.[1] For four consecutive weeks, BB&T advertised the sale in the legal organ of Forsyth County, but did not advertise

---

[1] The security deed is not contained in the appellate record; however, the parties do not dispute its existence or that it contained a power of sale authorizing the foreclosure sale.

the sale in Dawson County. In July 2008, BB&T conducted the foreclosure sale in Forsyth County, was itself the highest bidder, and purchased the property for $3,340,000.

Also in July 2008, BB&T filed its report of foreclosure sale and application for confirmation. Nicholson Hills filed an answer in which it denied "that the foreclosure sale was advertised and conducted as required by law" and further denied that the Property sold for its true market value.[2]

After the parties conducted discovery, the trial court held a hearing on BB&T's application for confirmation in March 2011. At the commencement of the hearing, the parties agreed that the sole issue before the trial court for the purposes of that hearing was the legal question of whether the advertisement comported with the statutory requirements, and the transcript makes clear that both the parties and the trial court

---

[2] Although BB&T's initial report of foreclosure sale and application for confirmation indicated that the Property was located exclusively in Forsyth County, after Nicholson Hills answered and raised its defenses, BB&T filed an amended pleading which accurately reflected that the Property was located in both Forsyth and Dawson counties.

anticipated that any remaining evidentiary issues after the trial court's legal ruling would be addressed at a subsequent evidentiary hearing.[3]

Several months after the initial hearing, the trial court issued an order in which it concluded that the advertisement was legally deficient under the plain language of OCGA § 44-14-162 (a) and, therefore, denied BB&T's application for confirmation. In the same order, the trial court ordered a resale of the Property pursuant to OCGA § 44-14-161 (c), although it had not yet concluded its evidentiary hearing on the issues reserved. The instant cross-appeals followed.

1. In Case Number A12A0170, BB&T contends that the trial court erred in interpreting OCGA § 44-14-162 (a) to require that it advertise the foreclosure sale in both Forsyth and Dawson counties, and consequently erred in holding the advertisement legally deficient. We disagree and affirm this portion of the trial court's order.

---

[3] Nicholson Hills stipulated that, "for the purposes of [the initial] hearing," it would not challenge whether the foreclosure sale brought the true market value of the Property. The court noted at the conclusion of the initial hearing that, after it ruled on the advertising question, then the case would "go forward." It is not clear from the record, however, the intended scope and duration of the parties' stipulation. The trial court's order suggests that it had considered Nicholson Hills's objection to true market value ongoing.

4

OCGA § 44-14-162 provides, in relevant part, that "[n]o sale of real estate under powers contained in mortgages, deeds, or other lien contracts shall be valid unless the sale shall be advertised and conducted at the time and place and in the usual manner of the sheriff's sales in the county in which such real estate or a part thereof is located[.]" In construing this statute,

> our goal is to determine its legislative purpose. In this regard, a court must first focus on the statute's text. In order to discern the meaning of the words of a statute, the reader must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes. If the words of a statute, however, are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words. If, on the other hand, the words of the statute are ambiguous, then this Court must construe the statute, keeping in mind the purpose of the statute and "the old law, the evil, and the remedy." OCGA § 1-3-1 (a).

(Citations and punctuation omitted.) *Adventure Outdoors, Inc. v. Bloomberg*, 307 Ga. App. 356, 358-59 (1) (705 SE2d 241) (2010). The interpretation of a statute presents a question of law, which we review de novo. *Id.* at 358 (1).

5

Examining the text alone, it is plain that the statute addresses two requirements for a valid foreclosure sale: (1) the manner of advertising and (2) the conduct of the sale. That portion of the statute pertaining to advertising requires that "the sale shall be advertised . . . in the county in which such real estate or a part thereof is located[.]" This language is not ambiguous. It means that the sale shall be advertised in every county where any part of the property to be sold is located. Further, considering that many loans, especially those for large commercial developments, are secured by multiple properties located in more than one county or situated across county lines, it would be nonsensical to read this statute any other way. However, to the extent one might find the use of the singular word "county" (as opposed to the plural word "counties") ambiguous, one must keep in mind the purpose of the confirmation statute.

When the Georgia General Assembly originally enacted the confirmation statute in 1935,[4] "our country was emerging from a disastrous depression during which many mortgagors had not only lost their property through foreclosure but were forced to bankrupt against deficiency judgments after foreclosure sales in which mortgagees

---

[4] The pertinent language of OCGA § 44-14-162, as well as that of OCGA § 44-14-161, discussed *infra*, was originally adopted in a single statute. *See* Ga. Laws 1935, p. 381-82, § 2.

usually acquired the property at nominal or depressed bids."[5] Thus, the confirmation

process, which is a condition precedent to an action for deficiency judgment, was

intended "to protect a debtor from a deficiency judgment when the involuntary sale

brings less than the true market value."[6] The law requires that, following an

application for confirmation of a foreclosure sale under power of sale, the trial court

hold a hearing to "require evidence" of the property's true market value and to "pass

upon the legality of the notice, advertisement, and regularity of the sale."[7] The trial

court's primary duty at a hearing "is a judicial ascertainment that the property brought

at least its true market value on the foreclosure sale."[8] And, "[a] primary object of the

---

[5] *Thompson v. Maslia*, 127 Ga. App. 758, 762 (2) (195 SE2d 238) (1972).

[6] *Damil, Inc. v. First Nat'l Bank of Dalton*, 165 Ga. App. 678, 679 (302 SE2d 600) (1983); *accord Adams v. Gwinnett Commercial Bank*, 140 Ga. App. 233, 234 (2) (230 SE2d 324) (1976); *see also Jones v. Hamilton Mortg. Corp.*, 140 Ga. App. 490, 491 (231 SE2d 491) (1976) ("[T]he duty of the court is to test the fairness of the technical procedure of the actual sale and to insure that the sale has brought at least the true market value of the property.").

[7] OCGA § 44-14-161 (b), (c).

[8] *Guthrie v. Bank South, Douglas*, 195 Ga. App. 123, 125 (3) (393 SE2d 60) (1990) (punctuation omitted); *see also* OCGA § 44-14-161 (c) ("[A]t the hearing[,] the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale.").

advertisement is to attract buyers who will compete against one another so as to yield the highest price[.]"[9]

Given the clear legislative purpose of the statute, we agree with the trial court that a sale of real property under a power of sale made pursuant to OCGA § 44-14-162 (a) must be advertised in every county where the property or any portion of it is located. To hold otherwise ignores the legislative purpose of the advertisement requirement, which is to attract potential bidders to compete against one another in order to yield the highest price for the property. Accordingly, we affirm the trial court's judgment in Case Number A12A0170 in which it held that BB&T's advertisement failed to comport with the statutory requirements of OCGA § 44-14-162 (a) and therefore denied BB&T's application for confirmation.

2. In Case Number A12A0169, Nicholson Hills, in three related claims of error, contends that the trial court erred in sua sponte ordering a resale of the Property without first conducting an evidentiary hearing to give it an opportunity to defend against the same. To this end, Nicholson Hills contends that it will be harmed by the

---

[9] *Dan Woodley Communities, Inc. v. Suntrust Bank*, 310 Ga. App. 656, 657 (714 SE2d 145) (2011) (punctuation omitted).

8

resale because the true market value of the Property has declined since the 2008 foreclosure sale, leaving Nicholson Hills subject to a greater deficiency judgment.

A trial court's denial of an application for confirmation precludes a creditor from seeking a deficiency judgment against a debtor.[10] Nevertheless, OCGA § 44-14-161 (c) vests the trial court with "considerable discretion"[11] to order the subject property resold "for good cause shown."[12] The issue of resale is before the court in every confirmation proceeding, whether or not it has been specifically pled, but only so long as "the [debtor] is afforded the opportunity to defend against . . . a resale."[13] Further, it is clear that "there is no presumption in favor of a resale and there is no

---

[10] *See* OCGA § 44-14-161 (a) ("When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.").

[11] *Resolution Trust Corp. v. Morrow Auto Ctr.*, 216 Ga. App. 226, 227 (2) (454 SE2d 138) (1995) (punctuation omitted).

[12] OCGA § 44-14-161 (c) ("The court may order a resale of the property for good cause shown.").

[13] *Homes of Tomorrow, Inc. v. FDIC*, 149 Ga. App. 321, 323 (3) (254 SE2d 475) (1979) (punctuation omitted); *accord Adams*, 140 Ga. App. at 234 (2).

9

entitlement to a resale."[14] Rather, the burden of proof lies with the creditor to show "good cause" for a resale.[15]

Following its initial hearing solely on the issue of the sufficiency of BB&T's advertisement, the trial court denied the confirmation petition and directed that the Property be resold. However, by agreement of the parties and with the express consent of the trial court, the remaining issues relevant to the confirmation proceeding had been reserved for a later hearing. Thus, when the court ordered the resale, it had neither heard argument nor received any evidence related to the other aspects of the foreclosure sale or the desired outcome of the confirmation proceeding.[16] Under these circumstances, and even assuming a stipulation as to the true market value of the Property by Nicholson Hills, we cannot say BB&T met its burden of proving good cause for the resale, nor can we conclude that Nicholson Hills had the opportunity to

---

[14] *Resolution Trust Corp.*, 216 Ga. App. at 228 (2).

[15] Id.

[16] BB&T's argument that the trial court did, in fact, hold an evidentiary hearing is belied by the record. Although BB&T did, at some point, offer an exhibit binder to the trial court, neither the binder nor the documents it contained were ever tendered into the record, and BB&T expressly acknowledged at the time that, "[i]f we have to present evidence [after the initial hearing], we . . . can use the same material."

defend against the same.[17] Accordingly, without commenting on the merits of whether a resale is warranted, we vacate the trial court's judgment in Case Number A12A0169 and remand this case to the trial court to conduct additional proceedings on the issues remaining, including whether good cause exists for a resale of the property.

*Judgment affirmed in Case Number A12A0170, vacated in Case Number A12A0169 and case remanded. Phipps, P. J., concurs. Dillard, J., concurs in judgment only.*

---

[17] *See Wheeler v. Coastal Bank*, 182 Ga. App. 112, 114 (1) (354 SE2d 694) (1987) (recognizing that, although "the trial court has considerable discretion in the conduct of a confirmation hearing and in determining the relief to be afforded[,] . . . the finding of the trial court, as the trier of fact, must be supported by some evidence."); *see generally Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 261-62 (2) (424 SE2d 889) (1992) (remanding case for consideration of resale after holding that creditor failed to prove property sold for true market value); *Gov't Nat'l Mortgage Ass'n v. Belue*, 201 Ga. App. 661, 662 (2) (441 SE2d 894) (1991) (holding that trial court did not abuse its discretion in refusing to order a resale based upon evidence that the market value of other properties in the development had declined subsequent to the foreclosure sale).

11