**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1659. CIUPERCA v. RES-GA SEVEN, LLC

MILLER, Presiding Judge.

This case arises from an application for confirmation of a foreclosure sale filed by RES-GA Seven, LLC (" RES-GA") against Romeo Ciuperca. Prior to the confirmation hearing RES-GA moved for an order providing for the resale of the property in accordance with OCGA § 44-14-161 (c). Following the confirmation hearing, the trial court ordered a resale of the property, finding good cause to believe that the property did not sell for fair market value. Ciuperca appeals, contending that the trial court (1) erred in finding that the notice provisions of OCGA § 44-14-162.2 did not apply, and (2) erred in allowing a resale without any showing of good cause. We discern no error and affirm.

The trial court is the trier of fact in a confirmation proceeding, and an appellate court will not disturb its findings if there is any evidence to support them. Furthermore, we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment.

(Citations, punctuation and footnote omitted). *Greg A. Becker Enterprises, LTD v. Summit Investment Mgmt. Acquisitions I, LLC*, 314 Ga. App. 721 (725 SE2d 841) (2012).

So viewed, the evidence shows that on April 16, 2004, Ciuperca executed a promissory note ("Note") and Security Deed for a revolving line of credit in the amount of $700,000. Pursuant to the Security Deed, The Community Bank ("TCB") acquired a security interest in Ciuperca's real property located at 2751 Ozora Church Road in Loganville, Georgia. The Note was renewed on April 27, 2005, and again on May 11, 2006. On June 8, 2006, Ciuperca executed a Note modification and renewal, increasing the principal balance to $800,000, and a modification of the Security Deed to reflect the increased principal amount. The Note was renewed again on June 10, 2008 for yet a fourth extension. On March 7, 2011, the Security Deed was assigned to RES-GA, a special-purpose entity formed to exercise foreclosure rights.

After Ciuperca defaulted on the Note, RES-GA initiated foreclosure proceedings on the secured property in accordance with the power of sale authorized in the Security Deed. RES-GA did not provide notice pursuant to OCGA § 44-14-162.2 (a), because the loan file indicated that the subject loan was for commercial property. Prior to foreclosure, RES-GA's appraisal valued the property at $330,000.[1] The appraisal included only 9.25 of the approximately 12 total acres. The appraisal failed to include the roughly 2.5-acre commercial parcel of the property. Upon receipt of the appraisal, RES-GA verified that the address on the appraisal was correct, but overlooked the fact that the appraisal did not cover the full acreage of the property. RES-GA conducted the foreclosure sale on May 3, 2011, and knocked the property back to itself as the sole bidder for $363,000. RES-GA subsequently recorded a Deed Under Power , and petitioned to confirm the foreclosure sale pursuant to OCGA § 44-14-161.

Prior to the scheduled confirmation hearing, RES-GA filed a motion for an order providing for the resale of the property in accordance with OCGA § 44-14-161. The trial court initially denied RES-GA's motion based on Ciuperca's proffer that he

---

[1] Ciuperca presented evidence based on an independent appraisal that the subject property was worth $585,000.

3

was living in the residence located on the foreclosed property at the time he applied for and received the commercial loan. At the confirmation hearing, RES-GA provided evidence that Ciuperca did not list the subject property as his residence and indicated that the primary purpose of the loan was for business. RES-GA also presented evidence that it relied on a faulty appraisal in bidding on the property at the foreclosure sale.

Following the confirmation hearing, the trial court entered an order finding that the notice requirements of OCGA § 44-14-162.2 were not triggered in connection with the foreclosure proceedings, because RES-GA had good cause to believe that the defaulted upon loan was for commercial, rather than residential property. The trial court further found that the appraisal RES-GA relied upon in bidding on the property failed to include the entire property at issue. Thus, the trial court found that there was good cause to believe that the property did not sell for fair market value, and ordered a resale pursuant to OCGA § 44-14-161 (c).

1. Ciuperca contends that the trial court erred in finding that the notice provisions of OCGA § 44-14-162.2 (2011) did not apply. We disagree.

OCGA § 44-14-162.2 (2011) provides in relevant part that:

(a) Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor.

Prior to July 1, 2012, OCGA § 44-14-162.3 (a) (2011) provided that the notice requirement of OCGA § 44-14-162.2 (a) applied only "to the exercise of a power of sale of property all or part of which is to be used as a dwelling place by the debtor at the time the mortgage, security deed, or lien contract is entered into."[2] See Ga. L. 2009, p. 614, § 2 (SB 141). Consequently, since the sale occurred prior to July 1, 2012 under the former statute, "to establish [a] debtor's right to notice, the debtor [had to] be one who used the property as a residence at the time he acquired the status of debtor." *Ray v. Atkins*, 205 Ga. App. 85, 88 (2) (421 SE2d 317 (1992).

---

[2] OCGA § 44-14-162.3 was subsequently amended effective July 1, 2012, to delete former subsection (a). Ga. L. 2012, p. 1079, § 1 (SB 333).

Ciuperca acquired the status of debtor on April 16, 2004, when he executed the Note and Security Deed, and the evidence supported the trial court's finding that he was not using the subject property as his residence at that time. Notably, Ciuperca listed a different residential address, 6048 Grand Forest Court, Norcross, Georgia 30092, on his Commercial Loan Application, dated March 25, 2004. Ciuperca also listed Grand Forest Court as his address in a Loan Report, dated April 14, 2004; a Boarding Data Sheet, dated April 15, 2004; the original Note, Security Deed and Assignment of Rents documents, dated April 16, 2004; and the first of five Disbursement Requests, dated April 16, 2004. Additionally, the Real Estate Compliance Checklist stated that the loan was not secured by a mortgage on a home or any other type of dwelling which Ciuperca was using or expected to use as his principal residence.

Based on the foregoing, we find competent evidence in the record showing that the property was not used as Ciuperca's dwelling place at the pertinent time. Therefore, the trial court was authorized to find that the notice provisions of OCGA § 44-14-162.2 (a) (2011) did not apply. See *Funderburke v. Kellet*, 257 Ga. 822, 824 (2) (364 SE2d 845) (1988); see also *Ray*, supra, 205 Ga. App. at 88-89 (2).

2. Ciuperca contends that the trial court erred in allowing a resale of the secured property without any showing by RES-GA of good cause, and in failing to specify what evidence it relied on when invoking the good cause provisions under OCGA § 44-14-161 (c). We disagree.

OCGA § 44-14-161 sets out the process for obtaining an order of confirmation and approval following a foreclosure sale under powers contained in security deeds, mortgages or other lien contracts, including the requirement of evidence showing that the property sold for its true market value. OCGA § 44-14-161 pertinently provides that:

> (b) The court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale.

> (c) The court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may order a resale of the property for good cause shown.

OCGA § 44-14-161 (c) vests the trial court "with considerable discretion in determining whether to order a resale. The statute does not define what constitutes

7

'good cause' and does not require evidence of bad faith or negligence." (Citations and punctuation omitted) *Greg A. Becker Enterprises*, supra, 314 Ga. App. at 723 (1). "[O]n appeal, we will not disturb that exercise of discretion unless it is clearly, patently and manifestly abused." *McDowell v. Regions Bank*, 311 Ga. App. 600 (716 SE2d 638) (2001).

The record in this case supports the trial court's finding that good cause existed to believe that the property did not sell for true market value, because RES-GA's bid at the foreclosure sale was based on an appraisal that did not include the entire land mass or full extent of the property at issue. Based on this clear omission in the appraisal, the trial court was authorized to find that the property did not sell for fair market value at the foreclosure sale. See *The Village at Lake Lanier, LLC v. State Bank and Trust Co.*, 314 Ga. App. 498, 500 (1) (b) (724 SE2d 806) (2012) (trial court was authorized to order a resale since creditor acted in good faith by having property appraised prior to sale and the failure to sell for fair market value was not due to any intentional act); see also *McDowell*, supra, 311 Ga. App. at 600.

*Judgment affirmed. Ray and Branch, JJ., concur.*