**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**February 21, 2013**

# In the Court of Appeals of Georgia

A12A2344. EAGLE GA I SPE, LLC v. ATREUS COMMUNITIES
OF FAIRBURN, INC. et al.

BOGGS, Judge.

Eagle GA I SPE, LLC ("Eagle") filed an application for confirmation of a foreclosure sale. Following a hearing, the trial court found that Eagle did not sell the property for its true market value and denied confirmation. The court also denied Eagle's request for a resale. Eagle now appeals from the trial court's order. Having reviewed the record, we discern no error and affirm.

OCGA §44-12-161 sets forth the procedure for confirming a nonjudicial foreclosure sale. That Code section provides:

(a) When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the

debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

(b) The court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale.

(c) The court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may order a resale of the property for good cause shown.

In a confirmation proceeding, the "judge sits as a trier of fact, and his findings and conclusions have the effect of a jury verdict. He hears the evidence and his findings based upon conflicting evidence should not be disturbed by a reviewing court if there is any evidence to support them. What value is, or may have been, is a question of fact to be resolved as others are." (Citations and punctuation omitted.) *Govt. Nat. Mtg. Assoc. v. Belue*, 201 Ga. App. 661, 662 (1) (411 SE2d 894) (1991).

This court does not "determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment." (Citation and punctuation omitted.) *Ciuperca v. RES-GA Seven, LLC*, ___ Ga. App. ___ (735 SE2d 107) (2012).

So viewed, the record reveals that a builder/developer now known as Atreus Communities of Fairburn, Inc. ("Atreus") received a loan from Eagle's predecessor in interest that was secured by certain real property. The loan was guaranteed by Jonathan Been and evidenced by a promissory note. When Atreus defaulted on the payment of the note, Eagle foreclosed on the property which consisted of 13 developed lots. The property sold to Eagle for $155,000 at the foreclosure sale. Eagle then filed an application for confirmation of the foreclosure sale. The parties stipulated that the report of the sale (see OCGA § 44-14-161 (a)) and the manner of advertisement of the sale (see OCGA § 44-14-162) were proper.

Following a hearing on the Eagle's confirmation application, the trial court issued an order denying confirmation. It concluded that Eagle's expert, who reported a value of $155,000 for the property, failed to consider the sales comparison approach to value the property as required by the USPAP (Uniform Standards of Professional Appraisal Practice), wrongly calculated the tax liability of the property, and admitted

3

that the absorption period in his report was a "guesstimate." The court also found that the expert's DCF (discounted cash flow) model "is unreliable and his opinion of value is unsupported." The court found that Atreus' expert "presented reliable testimony that the value of the Property derived from a bulk sales comparison approach is $228,000," and that the "bulk sales comparison provides a better appraisal of the true market value at the time of sale and is a more credible methodology than the income approach to valuation." The court found that the testimony of Atreus' expert appraiser was more credible than that of Eagle's expert appraiser.

The court denied Eagle's application for confirmation because Eagle only sold the property for $155,000 - less than its true market value. The court also ruled that "[Eagle] has shown no facts or evidence that would prove good cause and [is] not entitled to resell the Property."

1. Eagle contends that the trial court erred "in holding that the DCF analysis was unreliable where the case law is clear that the DCF analysis is an appropriate methodology for appraising real property." But the trial court did not conclude that DCF was an inappropriate methodology; rather it ruled that Eagle's expert's valuation based upon that model was unreliable because he admitted that his lot-to-house ratio

4

and the absorption period he used were not based on empirical data but were only educated guesses based on his experience. The court also held that the bulk sales comparison approach provided a *better* appraisal of the true market value at the time of the sale.

Eagle's expert appraiser testified that he used the DCF methodology to determine the value of the lots. He explained that he first developed the retail price of the lots to be sold "by looking at comparable subdivisions in the market . . . in the same general price point." He calculated a retail value of $27,500 per lot. Eagle's expert then applied a lot-to-home price profit ratio resulting in an appraised value of $155,000 for the 13 lots.

On cross-examination, Eagle's expert admitted that there was nothing in his report to explain how he arrived at his lot-to-home price ratio and "that there were no actual sales or a single property identified in [his] report" that would explain this ratio. He admitted that the ratio he used was based upon his experience and "data contained in files on over 200 subdivisions," and that had he used the actual ratios from other subdivisions, the retail value would have been higher; but he insisted that his opinion as to value would have been the same.

On cross-examination, Eagle's expert agreed that the validity of the DCF model is "based on the accuracy of all the assumptions and predictions [he] made with respect to those variables" and that the alternative sales comparison approach requires "zero predictions" but does not "reflect what people today are anticipating in the market." And he admitted that "you have to look at actual sales in the market, how fast the property is selling out, and perform a market analysis to come up with your absorption period,"[1] but he nevertheless estimated this value based only upon his experience.

Atreus' expert appraiser testified that his appraised value for the 13 lots was $228,000. He arrived at this value using a bulk sales analysis through a sales comparison approach, which he opined was a better method than the DCF "because it is a true market value of the current market, what is going on in the market at the present time . . . . a DCF has too much estimation as to absorption time to that estimation as to the discount rate. Everything in a DCF is estimated." He explained further that a bulk sale is a sale typically bought by investors to hold for future investment "and/or to build on themselves," while a retail sale is "a lot sale that's

---

[1]Absorption period is the time within which property will be sold on the market. See Black's Law Dictionary, p.6 (7th ed. 2000).

6

sold, typically one sale, and it's sold to an individual or a builder to build a house on."

Atreus' expert stated that he had looked at eight bulk sales he felt were comparable in the general market area which were listed on his report. He explained that he made adjustments for the quantity of lots, the location and the size of the lots, and amenity packages, and that after weighing the data, concluded that the value of the property was $17,500 per lot or $227,500 for the 13 lots, which he rounded to $228,000.

"On appellate review, the test is not whether this court would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale." (Citation, punctuation and footnote omitted.) *TKW Partners v. Archer Capital Fund*, 302 Ga. App. 443, 448 (2) (a) (691 SE2d 300) (2010). The trial court, as the trier of fact, was authorized to weigh the evidence presented here and judge the credibility of both experts to conclude that Eagle's expert's valuation under the DCF model was unreliable and that

Atreus' expert was more credible and used a more appropriate valuation method.[2] The record contains evidence to support the findings of the trial court and we cannot second guess the court's ruling. Id. at 449 (2) (b); see also *REL and Assoc. v. Fed. Deposit Ins. Corp.*, 304 Ga. App. 33, 35 (1) (a) and (b) (695 SE2d 370) (2010).

2. Eagle contends that the trial court erred in refusing to order a resale of the property. "The trial court is authorized by OCGA § 44-14-161 (c) to order a resale of the property 'for good cause shown.' It has been held that this statute confers upon the trial court a legal discretion in determining whether to order a resale." (Citation omitted.) *Belue*, supra, 201 Ga. App. at 662 (2).

> The language of the confirmation statute places the burden of proof on the creditor not only to show that the sale brought true market value of the property, but also to show good cause for a resale, and the statute vests considerable discretion in the trial court in this determination. The statute does not *entitle* the creditor to a resale, either for mere failure to show the sale brought true market value, for a mere flawed appraisal, or for any reason. The provision that resale may be granted for good cause shown (§ 44-14-161 (c)) means there is no presumption in favor of resale and there is no entitlement to a resale. The statutory language authorizing resale is entirely permissive and not mandatory.

---

[2]The record also supports the trial court's finding that Eagle's expert incorrectly calculated property taxes.

Moreover, the statute does not define what constitutes "good cause," does not require a finding by the trial court of bad faith or negligence in the appraisal or sale, and does not even require evidence of bad faith or negligence. We have declined to set restrictions on the trial court's discretion in denying resale, for to set restrictions would be to require evidence of misfeasance, malfeasance, or defect in the sale before a resale can be denied, which would put the burden of proof on the *debtor*. To the contrary, we have held: [w]here no good cause has been shown which would demand a resale, there is no abuse of the exercise of the trial court's discretion, as a matter of law.

(Citations and punctuation omitted; emphasis in original.) *Resolution Trust Corp. v. Morrow Auto Center, Ltd.*, 216 Ga. App. 226, 227-228 (2) (454 SE2d 138) (1995).

The court ruled here that "[Eagle] has shown no facts or evidence that would prove good cause and [is] not entitled to resell the Property." Eagle argues that the failure to sell the property for its true market value alone constitutes good cause for a resale. But "a holding that if a sale fails to bring true market value the creditor is entitled to resale, would obliterate the statute and remove the trial court's discretion." Id. at 229 (3). And we have held that the fact that the property sold at the value determined by the creditor's appraiser does not constitute good cause to authorize a resale. Id. at 229 (2).

9

Eagle contends it has shown good cause because it obtained an appraised value of $155,000 from its expert appraiser before the foreclosure sale and sold the property for that price, and there was no evidence that it intentionally sold the property for less than its true market value. Eagle cites *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 261 (424 SE2d 889) (1992) in support of this argument. In *Gutherie*, this court concluded that a resale was "authorized" where the creditor did not prove that it sold the property for true market value but did obtain an appraisal before the sale and sold the property at the appraised value. Id. at 261 (2). But we have already observed that *Gutherie* does not demand this outcome:

> [w]e have held in particular cases that a resale was "authorized," . . . this does not constitute a holding that a resale was *demanded* in those cases or that there would be any "entitlement" to resale in other cases with similar circumstances. Discretion to grant a resale is discretion to deny a resale. There are special reasons that the issues of "good cause" and resale are left to the "considerable discretion" of the trial court, as this case proves.

(Citations omitted; emphasis in original.) *Resolution Trust Corp.*, supra, 216 Ga. App. at 228 (2).

"Traditionally, where a trial court is vested by statute with broad discretion, appellate courts do not disturb that exercise of discretion unless it is clearly, patently,

10

and manifestly abused." Id. at 229 (3). Therefore, we hold that the trial court did not abuse its discretion here in denying Eagle's request for a resale. Id.

*Judgment affirmed. Doyle, P. J. and Andrews, P. J., concur.*